[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 97-2401
Non-Argument Calendar
_____

D.C. Docket No. 95-311-CR-T-99(B)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EZELL GILBERT,

Defendant-Appellant.
_____

Appeal from the United States District Court for the
Middle District of Florida
_____

**(April 15, 1998)**

Before COX, BLACK and HULL, Circuit Judges.

PER CURIAM:

Ezell Gilbert was convicted, following a plea of guilty, of possession with intent

to deliver cocaine base and possession with intent to deliver marijuana, both in violation of 21 U.S.C. 841(a)(1). He appeals his 292-month sentence, raising three issues. We affirm.

1. *Career Offender Status*

The district court sentenced Gilbert as a career offender under U.S.S.G. § 4B1.1. To qualify as a career offender, a defendant must have been convicted of at least two "crimes of violence" or drug crimes. *See id.* Gilbert clearly had one — he was previously convicted of possession of cocaine with intent to distribute. But Gilbert contends that the second crime on which the district court relied, carrying a concealed firearm in violation of Florida law, is not a "crime of violence," and that he should therefore not be sentenced as a career offender. This court reviews a district court's interpretation of the Sentencing Guidelines de novo. *See United States v. Spell*, 44 F.3d 936, 938 (11th Cir. 1995).

Although this court has never reached the precise question whether carrying a concealed firearm is a "crime of violence" as defined by U.S.S.G. § 4B1.2(1), it has posted the road signs leading the way. There are two ways for a crime to be a "crime of violence" under § 4B1.2(1): either the offense has an element of force or attempted force, or it "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury

2

to another." U.S.S.G. § 4B1.2(1)(ii)(1995). The elements of a concealed firearm offense do not include any use of force; knowing carrying and concealment suffice. *See Smith v. State*, 687 So. 2d 875, 878 (Fla. App. 2d Dist. 1997). Carrying a concealed firearm, therefore, is a "crime of violence" only if it "presents a serious potential risk of physical injury."

The same language concerning a "serious potential risk" appears in the federal armed career criminal statute, 18 U.S.C. § 924(e), where it is an element of a "violent felony." Construing that section, this court has held that carrying a concealed weapon is conduct that poses a serious potential risk of injury. *See United States v. Hall*, 77 F.3d 398, 401 (11th Cir. 1996). Because the definitions of "violent felony" and "crime of violence" are in this respect identical, *Hall*'s conclusion applies equally to the question at hand here. *Cf. United States v. Patton*, 114 F.3d 174, 176 (11th Cir. 1997) (extending *Hall*'s reasoning to the definition of "crime of violence" in § 4B1.2(1)). We thus hold that carrying a concealed weapon in violation of Florida law is a "crime of violence" under U.S.S.G. § 4B1.2(1). Gilbert was properly sentenced as a career offender.

### 2. *Refusal to Depart Downward*

At Gilbert's sentencing hearing, the court expressed frustration at the sentence it was required to impose for Gilbert's small-scale drug dealing, enhanced by one

previous instance of small-scale dealing and a concealed firearm offense:

> The fact that I think the sentence is too high is immaterial. Maybe I shouldn't say what I think, but Congress has gone too far. For us to pay for this man to be in jail 24 years is ridiculous when it runs $30,000 a year. I can see that money going for other things. How do we curb him? I don't know. But I hate spending $30,000 a year for the next 24 years for him. He doesn't deserve it. I'd rather spend that money on some poor child, some poor person, sick person, some deprived person.

> But I don't see any authority under the law for me to downwardly depart. So, counsel, I have given you reversible error if you can convince the Eleventh Circuit that I'm wrong.

(R.3 at 4-5.) Gilbert asserts that the district court found that Gilbert's criminal history was overstated, and that the court accordingly had authority to depart downward under U.S.S.G. § 4A1.3. Although a discretionary refusal to depart downward is not appealable, we may consider de novo whether the district court had authority to depart if the refusal to depart downward was based on the district court's perceived lack of authority. *United States v. Fossett*, 881 F.2d 976, 979 (11th Cir. 1989).

Gilbert is correct that the district court could have departed downward if it had found Gilbert's criminal history to be overrepresented. *See* U.S.S.G. § 4A1.3 (policy statement) (downward departure may be appropriate for defendant with extensive history of petty crime); *United States v. Lindia*, 82 F.3d 1154, 1165 (1st Cir. 1996). But the record does not reveal such a finding. The court's statement followed Gilbert's counsel's argument that the court should depart downward because of

4

Gilbert's overrepresented criminal history. Even so, the district court did not suggest that Gilbert's criminal history did not accurately reflect the seriousness of his conduct. Rather, the court simply conveyed its discontent with the policy choices that Congress has made in imposing high sentences for relatively minor crimes, thus requiring spending for prisons instead of more constructive programs. Disagreement with the policy choices underlying the Sentencing Guidelines and sentencing statutes is not a ground for downward departure, and the court properly determined that it lacked authority to depart downward. *See United States v. Gonzalez-Lopez*, 911 F.2d 542, 551 (11th Cir. 1990).

### 3. *Extra Acceptance-of-Responsibility Point*

The district court awarded Gilbert a two-point reduction in his offense level for acceptance of responsibility. Gilbert contends, however, that he is entitled to a three-point reduction under U.S.S.G. § 3E1.1(b) either because he timely provided information to the Government concerning his offense, U.S.S.G. § 3E1.1(b)(1), or because he timely notified the Government of his intention to plead guilty, U.S.S.G. § 3E1.1(b)(2). The timeliness of these acts is an issue of fact, the resolution of which we review for clear error only. *See United States v. McConaghy*, 23 F.3d 351, 353 (11th Cir. 1994).

Apart from a bare assertion that he spoke to the DEA, there is no record

evidence to suggest that Gilbert provided any information to the Government concerning his offense, and we thus reject his challenge based on that ground. The question of the timeliness of Gilbert's guilty plea requires a little more discussion.

Gilbert was indicted on December 1, 1995. He was arraigned on January 18, 1996. On January 24, trial was set for March 4. On February 13, he moved to suppress evidence. The court denied this motion on March 1, and on March 4 — the day of trial — Gilbert pleaded guilty. There is no record evidence of when Gilbert notified the Government of an intent to plead guilty, but the record shows that the Government filed an exhibit list and notice of prior convictions on March 1.

As a general rule, pleas on the eve of trial are not timely. *See United States v. Kimple*, 27 F.3d 1409, 1413 (9th Cir. 1994); *United States v. Donovan*, 996 F.2d 1343, 1345 (1st Cir. 1993). Pleas at that time do not help either the Government to avoid trial preparation or the court to manage its schedule efficiently, the two purposes served by the § 3E1.1(b) additional one-point reduction. *See McConaghy*, 23 F.3d at 353.

Gilbert contends nonetheless that in his case he pleaded guilty very soon after the denial of his motion to suppress, and that the plea was therefore timely; to conclude otherwise, he contends, would penalize him for exercising a right to seek suppression of evidence. Not so. First, this court has declined to consider the

6

Guidelines' limitations on some offense-level reductions to be improper penalties for exercise of legal rights. *See United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997). Second, looking at the timeliness of the plea *solely* from the defendant's perspective (as Gilbert suggests), without taking into account the obvious fact that the Government had to prepare for trial and therefore did not benefit from avoiding trial preparation, defeats the purpose of § 3E1.1(b)'s incentive to plead early. It is after all a rare case when the defendant does not plead as soon as he believes it convenient and appropriate for him to do so. Thus, if the defendant's trial strategy (such as a choice to file a motion to suppress) is given undue weight, a guilty plea would almost always warrant a three-point reduction regardless of whether § 3E1.1(b)'s purposes have been served. To avoid this result, district courts should give more weight to the state of the Government's trial preparation than to the defendant's position or strategy.[1] So considered, the district court's finding that the plea was not timely is not clearly erroneous.

---

[1]   Of course, in the unusual circumstances that the defendant's delay is caused *only* by his counsel's proven need to investigate the propriety of pleading guilty, *McConaghy* requires that the cause for the defendant's delay figure into the timeliness assessment. *See McConaghy*, 23 F.3d at 354. No such circumstances have been shown here.

For the foregoing reasons, Gilbert's sentence is affirmed.

AFFIRMED.